Argued and submitted May 3, 1988, accused reprimanded January 18, 1989

# In re Complaint as to the Conduct of
## WILLARD K. CAREY,
*Accused.*
### (OSB 86-5; SC S34688)
767 P2d 438

Argued and submitted May 3, 1988.

Teresa J. Schmid, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the opening and reply briefs for the Oregon State Bar.

John H. Kottkamp, Pendleton, argued the cause and filed the answering brief for the accused.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Jones and Gillette, Justices.*

PER CURIAM

---

\* Lent, J., retired effective September 30, 1988; Campbell, J., retired effective December 31, 1988.

## PER CURIAM

The Oregon State Bar initiated this lawyer disciplinary proceeding against Willard K. Carey, who practices law in LaGrande, a city of some 12,000 inhabitants. The accused has resided in LaGrande his entire life and has practiced law there since his admission to the bar in 1956. The bar petitions this court to reject the trial panel's sanction of a public reprimand and seeks an order suspending the accused from the practice of law for 60 days for violations of the disciplinary rules.[1] We hold that a reprimand in the form of this opinion serves as sufficient sanction.

The charges arise out of the accused's handling of the assets of the estates of three legally incompetent persons, Bernice Allen, age 82, and her two retarded sons, ages 57 and 58. The Allens were and are close friends of the accused. The accused was appointed to act as guardian/conservator[2] for each of the estates. He arranged to have the Allens cared for at the only available facility in the area, the LaGrande Nursing Center. Of course, this opinion addresses the propriety of the accused's actions as a lawyer, and not as a guardian or conservator.

The accused decided that the money in the estates and future income from the government would not cover nursing home costs. He therefore made seven loans from the assets of the estates to various personal friends, including his legal secretary, to produce more interest than could be obtained from any financial institution. Five were timely repaid, two were not. The accused personally satisfied the balances of the two bad loans.

The accused neither consulted with the Allens or obtained their consent before making the loans, nor did he obtain the permission of the court or of any impartial representative of the Allens. He also did not recommend to the

---

[1] On December 1, 1988, several amendments to the disciplinary rules became effective. Unless otherwise noted, all references to the disciplinary rules in this case are to the form of those rules in effect at the time the accused did each of the acts for which he is allegedly subject to discipline.

[2] The accused was appointed to serve as guardian/conservator for Bernice Allen on January 31, 1979, and for her two retarded sons, Dale and Glenn Allen, on April 18, 1979.

Allens, the court or any impartial representative that independent counsel be sought concerning any of the loans.

## THE FIRST LOAN

■    The accused first lent $880 of estate assets to his legal secretary, who promptly repaid it. He should not have made such a loan, because "[t]he exercise of the accused's independent judgment reasonably may have been affected by his personal relationship with * * * his secretary." *In re Harrington,* 301 Or 18, 27, 718 P2d 725 (1986). No amount of disclosure would cure this actual conflict. A lawyer simply may not lend estate money to his partners, associates or employees. Such a *per se* rule best serves the purpose of DR 5-101(A). We find the accused guilty of violating DR 5-101(A).[3]

## THE SECOND LOAN

■    The accused also lent approximately $14,800 from the estates to a long-time friend. The accused personally had to repay about $9,000 because his friend defaulted. While this loan was outstanding, the accused's law partner represented the friend on a charge of driving under the influence of intoxicants. The accused knew or should have known of this representation. This representation of the friend thus violated DR 5-105(B),[4] because it created an undisclosed likely conflict between two current clients.[5]

---

[3] DR 5-101(A) formerly provided:

"Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

On June 1, 1986, DR 5-101(A) and 5-104(A) were amended to add the following sentence:

"Full disclosure shall include the recommendation that the client seek independent legal advice concerning the continued representation by the lawyer."

[4] DR 5-105(B) provides:

"A lawyer shall not continue employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, except to the extent permitted under DR 5-105(C)."

[5] We are not deciding on the facts of this case whether the accused could have cured this conflict by making disclosure and obtaining consent pursuant to DR 5-105(C).

## THE THIRD LOAN

■ The accused lent $30,000 to personal friends, which they timely repaid. There is no clear and convincing evidence that the accused's own interests did or reasonably could have affected his professional judgment on behalf of the Allens. No disciplinary rule or statute requires court approval prior to lending money of an estate under these circumstances.[6]

## THE FOURTH LOAN

■ The fourth loan was to another friend and, again, his friendship proved costly. The accused personally had to repay $7,950 that the friend failed to pay. During the pendency of this loan, the accused represented the friend in a dissolution of marriage proceeding. There was an actual conflict between the interest of the estates and interest of the friend. The debts of the friend were necessarily an issue in the dissolution proceeding and the treatment of the debt in the dissolution proceeding could have affected the estates. We find the accused guilty of violating DR 5-105(A)[7] and (B). *See In re Renn,* 299 Or 559, 704 P2d 109 (1985).

## THE FIFTH LOAN

■ The accused made two loans totalling about $14,000 to a couple who were personal friends and clients. The accused assumed personal liability for one of the loans. Clearly, as a guarantor of one of the loans, his own financial interest could have been affected by the loans. We find the accused guilty of violating DR 5-101(A).

Moreover, the accused not only had an ongoing attorney-client relationship with the couple when the first loan was

---

[6] ORS 126.297 provides:

"Any sale or encumbrance to a conservator, the spouse, agent or attorney of the conservator, or any corporation or trust in which the conservator has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest is voidable unless the transaction is approved by the court after notice as required under ORS 126.007 to interested persons and others as directed by the court and a hearing of objections, if any."

There was no substantial conflict of interest involved in this third loan. Therefore, the statute does not apply.

[7] DR 5-105(A) provides:

"A lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C)."

made, but he also accepted new employment after the first loan and continued that employment through the time of the second loan, thus creating an undisclosed likely conflict of interest between two current clients, the couple and the Allens.[8] Therefore, we find the accused guilty of violating DR 5-105(A) and (B).

## THE SIXTH LOAN

The accused lent $8,000 to another couple who also were personal friends. They repaid the loan five years later. There is no clear and convincing evidence that the accused violated any disciplinary rule with regard to this transaction.

## THE SEVENTH LOAN

The accused lent approximately $19,000 to the president and sole shareholder of the LaGrande Nursing Center. The accused represented the nursing center and the president of the nursing home corporation. Although all the loans were repaid with interest by credits to the estates for the care of the Allens, the accused put himself in an actual conflict of interest by representing all three clients. We find the accused guilty of violating DR 5-105(A) and (B).

## ACCOUNTING

The accused also was charged with failing to account adequately to the Union County Circuit Court during the last years of the conservatorship before he resigned and was replaced. The accused admittedly commingled the funds of the three estates and treated them as a "family asset." Under the unique facts of this case, we cannot say that this constituted a violation of any disciplinary rule. Nevertheless, it was necessary to hire a certified public accountant to correct the deficiencies in the accused's record keeping. The records of the loans and reports to the court by the accused were grossly inadequate. We find the accused guilty of violating DR 9-102(B)(3) (current DR 9-101(B)(3)).[9]

---

[8] See note 5, *supra.*

[9] Former DR 9-102(B)(3) (current DR 9-101(B)(3)) provides:

"A lawyer shall:

"* * * * *

"(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

## SANCTION

We repeat what this court previously stated:

"[T]he purpose of a sanction is not to penalize the accused, but to protect the public and the integrity of the profession. To meet these objectives it is appropriate, in degrees varying with the disciplinary rule involved, to consider the type of duty violated by the accused, the accused's mental state at the time of the violation, the injuries caused by the violation and the existence of any aggravating or mitigating factors." *In re Bristow,* 301 Or 194, 206, 721 P2d 437 (1986) (citation omitted; footnote omitted).

The instant case involves a very experienced probate lawyer who simply tried to do too much for his clients and friends. He was not only an experienced lawyer, but a former member of the Board of Governors of the Oregon State Bar. We believe his protestations that he did not know that his actions violated the disciplinary rules, but he *should have* known that his acts violated those rules. His ignorance is no excuse. On the other hand, the accused was never motivated by self-interest or personal avarice. Indeed, he suffered substantial personal financial losses from the transactions. Neither his clients nor the Professional Liability Fund suffered any economic loss. Nonetheless, he exercised poor judgment by not recognizing actual and likely conflicts of interest and by lending estate funds to unsecured borrowers.

There is always a danger, particularly in practice in smaller cities and towns, that a lawyer will use available funds such as those in these estates to increase his own reputation in the community as a person who can "get things done" for a client. Indeed, the accused here concedes that people in the community where he practices law were aware that he "had the capacity to find money for people and arrange and negotiate loans for them." We are satisfied that no improper motive was involved, however. The record reveals that in making these loans the accused was not attempting to generate business for himself or his firm, but that his sole motivation was to help generate enough revenue so that his wards could be cared for in the LaGrande Nursing Center.

The acts were wrong, but "the accused's motivation arose from kindness and consideration for those less fortunate" and "they were provided with many valuable services

for which they were never charged." *In re Harrington, supra,* 301 Or at 34. His good motivations, however, do not alter the fact that the accused violated the Code of Professional Responsibility. Under the circumstances of this case, we hold that a reprimand in the form of this opinion serves as a sufficient sanction.