Argued and submitted January 14, accused suspended for 18 months February 13,
reconsideration denied March 17, 1992

In re Complaint as to the Conduct of

## Robert L. WOLF,
*Accused.*

(OSB 88-49; SC S38205)

826 P2d 628

James G. Rice, Portland, argued the cause for the accused.
With him on the briefs was Mark A. Gordon, Portland.

James H. Clarke, Portland, argued the cause and filed the
brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar charges that the accused engaged in criminal conduct that reflected adversely on his fitness to practice law, in violation of DR 1-102(A)(2),[1] and that he continued professional employment even though his exercise of professional judgment reasonably could have been affected by his personal interests, in violation of *former* DR 5-101(A).[2]

The trial panel found the accused guilty of violating DR 1-102(A)(2) and *former* DR 5-101(A) and ordered that he be suspended from the practice of law for three years, with the suspension stayed after one year if certain probationary terms are satisfied. The accused seeks review. We review the record *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2.

We find the accused guilty of violating DR 1-102(A)(2) and *former* DR 5-101(A). We suspend him from the practice of law for 18 months.

### FINDINGS OF FACT

Many of the essential facts are undisputed and may be summarized briefly.

The accused was admitted to practice law in Oregon in 1977. At the time of the hearing, he handled personal injury cases and criminal defense. Criminal defense had been a significant part of his practice for about ten years. Previously, he had served as a deputy district attorney for almost two years. The accused was born in 1949 and was married at the time of the events in question.

---

[1] DR 1-102(A)(2) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]"

[2] At the time of the events in question, *former* DR 5-101(A) provided in part:

"Except with the consent of the lawyer's client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests."

In late 1987, the accused undertook to represent a teenage girl and her parents in a personal injury action, arising from an automobile accident in which the girl suffered injuries. The injuries included a closed head injury, injuries to the pelvis, and permanent facial scarring. The girl was in a coma for several days, suffered from short-term loss of memory, and had to undergo rehabilitation therapy. The girl turned 16 years old in October 1987.

On the girl's behalf, the accused settled the personal injury case for $200,000. On April 29, 1988, a limousine was rented for the girl so that she could celebrate the settlement by spending the day in Portland. That afternoon, at the girl's urging, the accused served her wine and engaged in sexual intercourse with her in the back seat of the limousine. He knew that the girl was 16 years old and that it is a crime to give alcohol to a person who is under 21.

A grand jury indicted the accused for contributing to the sexual delinquency of a minor,[3] sexual abuse in the third degree,[4] and furnishing alcohol to a minor.[5] The circuit court rejected a civil compromise proposed jointly by the accused and by the girl and her parents. The accused entered into a one-year diversion program, which he completed successfully, and the criminal charges were dismissed.

Initially the parents were upset and angry at the accused. The accused admitted at the hearing that he knew

---

[3] ORS 163.435(1)(a) provides:

"A person 18 years of age or older commits the crime of contributing to the sexual delinquency of a minor if:

"(a)  Being a male, he engages in sexual intercourse with a female under 18 years of age[.]"

[4] ORS 163.415(1)(b) provides:

"A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact; and

"* * * * *

"(b)  The victim is incapable of consent by reason of being under 18 years of age, mentally defective, mentally incapacitated or physically helpless."

[5] ORS 471.410(2) provides:

"No one other than the person's parent or guardian shall sell, give or otherwise make available any alcoholic liquor to a person under the age of 21 years. A person violates this subsection who sells, gives or otherwise makes available alcoholic liquor to a person with the knowledge that the person to whom the liquor is made available will violate this subsection."

that the parents would not approve of his having sexual relations with the girl and that if he had realized that they would find out, "that would have stopped me."

Additional facts, some of which are disputed, will be discussed as appropriate below.

## DR 1-102(A)(2)

■ The accused's conduct violated three criminal statutes: sexual abuse in the third degree, contributing to the sexual delinquency of a minor, and giving alcohol to a minor. In *In re White*, 311 Or 573, 589, 815 P2d 1257 (1991), this court held:

> "Each case must be decided on its own facts. [In order for a criminal act to serve as a predicate to disciplinary action, t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

We begin by considering the lawyer's mental state and the extent to which the acts demonstrate disrespect for the law or law enforcement. The accused acted intentionally and for personal gratification. He also knew that he was violating the law.

The next factor to be considered is the extent of actual or potential injury to a victim. The accused testified, and argues before us, that the girl suffered no actual harm. He does not, and could not reasonably, argue that the criminal acts that he committed did not carry with them substantial potential injury to a victim. We find, by clear and convincing evidence, that the accused caused actual harm, including psychological harm, to the girl and to her parents. For example, the girl's pastor testified that she wrote a note after the incident, blaming herself for the accused's difficulties and contemplating suicide, and the girl's mother testified that the girl "was taking things, I think, very, very hard" in the aftermath of the incident. The mother also testified that the situation was very painful for the rest of the family.

Finally, this record does not establish a pattern of criminal conduct by the accused.

From a review of all the facts, we conclude that there is a rational relationship between the accused's criminal conduct and his fitness to practice law. The accused's crimes involved a girl who was the beneficiary of his professional efforts. Moreover, the accused testified that he thought that the girl understood him to be her lawyer. *See In re Weidner*, 310 Or 757, 770, 801 P2d 828 (1990) (lawyer-client relationship may be based on reasonable expectation of putative client).

The accused's crimes had as their victim a person whose interests he was representing and a person whom the law deems incapable of making certain important decisions, such as the decision to consent to sexual intercourse and the decision to prosecute or settle a tort claim. Such conduct shows disrespect for the law, which the lawyer has sworn to support, ORS 9.250, and bears on the trustworthiness of a lawyer who is retained to assist a vulnerable person. *See In re Howard*, 297 Or 174, 681 P2d 775 (1984) (conviction for prostitution supported a stipulation for lawyer discipline, because crime was a misdemeanor involving moral turpitude); *In re Bevans*, 294 Or 248, 655 P2d 573 (1982) (lawyer who was convicted of sexual abuse in the second degree committed a misdemeanor that involved moral turpitude and was suspended summarily; reinstatement allowed on proof of rehabilitation). Courts in other states have held that similar offenses reflect adversely on fitness to practice law. *See Com. on Pro. Ethics & Conduct v. Hill*, 436 NW2d 57 (Iowa Sup Ct 1989) (lawyer sanctioned for accepting sex from client in lieu of a fee); *Matter of Herman*, 108 NJ 66, 527 A2d 868 (1987) (lawyer suspended on grounds of moral turpitude for making unlawful sexual advances to child, unrelated to practice of law); *Office of Disciplinary Counsel v. King*, 37 Ohio St 3d 77, 523 NE2d 857 (1988) (consensual sex with 15-year-old nonclient reflected adversely on fitness to practice law).

The accused's criminal acts reflect adversely on his fitness to practice law; he violated DR 1-102(A)(2).

## *FORMER* DR 5-101(A)

*Former* DR 5-101(A) prohibited a lawyer from accepting employment if the exercise of professional judgment on the client's behalf would be or reasonably could be affected by the lawyer's personal interests, unless the lawyer obtained informed consent. That disciplinary rule also included continued, as well as initial acceptance of, employment. *In re Moore,* 299 Or 496, 507, 703 P2d 961 (1985).[6]

The accused argues that his employment by the girl's parents was, for all practical purposes, at an end when the crimes occurred. We disagree. The accused's employment as a lawyer was not at an end, even though a settlement had been reached. The proceeds of the settlement had not been distributed, and the record shows that the accused ultimately transferred the file to another lawyer, who received a fee for finishing work on the case. Thus, the accused's employment was continuing.

The accused also had a personal interest. He testified that, before the settlement had been approved by the court, he realized that he had developed a strong sexual interest in the girl, and she in him.

Although the record does not disclose an actual compromise of the accused's professional judgment in the conduct of the personal injury action, the exercise of his professional judgment on his clients' behalf reasonably might have been affected by his personal interest. From his testimony, the accused appears to have recognized that possibility.

Finally, the girl's consent to the acts does not amount to informed consent to the accused's continuing representation.

We conclude that the accused's acts violated *former* DR 5-101(A).

---

[6] DR 5-101(A) has been amended. Effective January 2, 1991, it expressly states that a lawyer "shall not accept *or continue* employment" in the described circumstances. (Emphasis added.)

## SANCTION

In deciding on the appropriate sanction, this court refers for assistance to the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards). *In re White, supra*, 311 Or at 591. ABA Standard 3.0 sets out the factors to consider: the duty violated, the lawyer's mental state, the potential or actual injury caused by the misconduct, and the existence of aggravating or mitigating factors.

The accused breached his duty to the minor whose interests he was representing, and to her parents, when he took advantage of their professional relationship for personal gratification. He breached his duty to the legal system by violating criminal laws. He breached his duty to the public by undermining confidence in members of the legal profession to fulfill professional obligations properly toward vulnerable persons.

As noted above, the accused acted intentionally, with knowledge that he was violating the criminal law, and for personal gratification.

We also have found that the girl and her parents suffered actual harm from the accused's acts. Those acts carried the potential for even greater harm.

The pertinent ABA Standards suggest that suspension is the appropriate sanction in this kind of situation. *See* ABA Standard 4.32 (conflict of interest between lawyer and client); ABA Standard 5.12 (criminal conduct that seriously adversely reflects on lawyer's fitness to practice). In considering the length of suspension, we next consider pertinent aggravating and mitigating factors.

There are several aggravating factors. First, the accused acted from a selfish motive, ABA Standard 9.22(b), in this instance, the motive of sexual gratification. Second, his conduct involved a victim who was vulnerable. ABA Standard 9.22(h). Third, he had substantial experience in the practice of law at the time of the events in question. ABA Standard 9.22(i). Fourth, the accused committed multiple offenses, ABA Standard 9.22(d), although they all arose out of the same incident.

A fifth aggravating factor is lack of candor during the disciplinary process. ABA Standard 9.22(f). The accused testified that he thought that the age of consent for sexual intercourse was 16 rather than 18. We disbelieve that testimony, for two reasons. First, the accused acknowledged that he knew the age of consent in Oklahoma and Michigan, where he was reared, even before he became a lawyer. Second, the accused is an experienced criminal defense lawyer and former prosecutor in Oregon and has handled cases involving sexual crimes.

A sixth aggravating factor, refusal to acknowledge the wrongful nature of the conduct, ABA Standard 9.22(g), requires some discussion. The tenor of the accused's testimony was that *he* was the victim of a vindictive district attorney and Bar. He testified, for example, that he should not have been prosecuted for crimes, because the family did not want him to be, and that he should not have been disciplined by the Bar: "I think the State Bar should have shown more sensitivity." The accused testified that he did not believe that his conduct was unethical or that it injured the girl, because she was mature and sexually experienced and because she seduced him. The accused's testimony reveals that his most central thoughts were for himself, both at the time of the incident and afterward. With respect to his mental state at the time of the incident, he testified:

"Q. Did you think it could have hurt her parents?

"A. I don't think it crossed my mind.

"Q. Did you think it could hurt her?

"A. Did I think it could hurt her? No.

"Q. Did you think it could hurt you?

"A. I think that may have crossed my mind, but I don't know if I thought about it."

The accused further testified that he went to a bar immediately after the incident:

"Q. * * * [Y]ou walked into [the bar]. You walked in with a smile on your face and bragged about having sex in the back of a limousine?

"* * * * *

"A. I don't know about bragged. I told [a friend] what had occurred. I was quite frankly in a fairly good mood about it. I had made the largest fee of my professional career and I'd had sex in the back of a limo with somebody who I liked and found very sensual. So I was not sad. So maybe brag is correct."

Although the accused paid lip service to feeling remorse later, his testimony demonstrates to us that he regrets the consequences of his conduct primarily because of their impact on him, his own family, and their interests.

In short, the accused still does not recognize fully the impact of his misconduct on his clients, the public, and the legal system. We note that, under the ABA Standards, the failure of an injured client to complain, or the claim of a lawyer that the client induced the wrongful conduct, is not mitigating. ABA Standard 9.4(b) & (f) and Commentary.

There also are, however, some mitigating factors. First, the accused has received no prior formal discipline. ABA Standard 9.32(a). Second, there was some delay in completing the disciplinary proceedings. ABA Standard 9.32(i). Third, the accused attempted to rectify the consequences of his misconduct, ABA Standard 9.32(d), by obtaining substitute counsel for the family and by fully informing his existing and potential clients of the pending charges. Fourth, the accused undertook rehabilitation efforts in the interim. ABA Standard 9.32(j).

The trial panel imposed a three-year suspension, but concluded that the last two years should be stayed if certain probationary terms (requiring therapy and drug counseling) were met. The accused, the Bar, and we agree that the record does not support those probationary terms. *See In re Haws*, 310 Or 741, 752, 801 P2d 818 (1990) (conditions of probation must relate to the charges).

Before this court, the Bar calls for a three-year suspension, without probation or stay, relying on assertedly similar cases from other jurisdictions. *See People v. Grenemyer*, 745 P2d 1027 (Colo 1987) (lawyer convicted of sexual assault of a minor was disbarred); *Matter of Wells*, 572 NE2d 1290 (Ind 1991) (three-year suspension for unsolicited touching of young men during course of professional relationship);

*Matter of Christie*, 574 A2d 845 (Del Sup Ct 1990) (three-year suspension for misconduct involving alcohol and masturbation with teenage non-clients); *Matter of Disciplinary Proceedings Against Woodmansee*, 147 Wis 2d 837, 434 NW2d 94 (1989) (three-year suspension for fourth degree sexual assault on client). The accused argues that a reprimand is the appropriate sanction.

The accused, in his testimony, revealed an astonishing lack of appreciation for the nature and extent of his professional obligations and for the potential and actual harm to his clients from his conduct. His principal focus has been on himself, his family, and their social and financial interests. Nonetheless, egocentrism is not a violation of the disciplinary rules, and the aggravating factors are counterbalanced to some extent by the mitigating factors.

We conclude that an 18-month suspension, without probation or stay, is the appropriate sanction in this case.

The accused is suspended from the practice of law for a period of 18 months, effective on issuance of the appellate judgment. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).