No. 844 September 24, 2025 643

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. Q. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

D. Q. R.,
*Respondent,*
*v.*

D. D. Q.-R.
and R. H.,
*Appellants.*

Umatilla County Circuit Court
24JU01544; A186325 (Control), A186569

In the Matter of K. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

K. O.,
*Respondent,*
*v.*

R. H.,
*Appellant.*

Umatilla County Circuit Court
24JU01559; A186570

Robert W. Collins, Jr., Judge.

Submitted August 28, 2025.

George W. Kelly filed the brief for appellant D. D. Q.-R.

Aron Perez-Selsky filed the brief for appellant R. H.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for appellant Department of Human Services.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for appellants D. Q. R. and K. O.

Before Lagesen, Chief Judge, Jacquot, Judge, and O'Connor, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

This is a dependency jurisdictional case over five-year-old K and one-year-old D, appealed by mother and father of D. The juvenile court determined that the children's conditions and circumstances endangered them, primarily because mother admitted that she had an anger and impulse control problem that placed the children at risk of harm and father of D had caused physical injury to K.[1] Both parents argue that the preponderance of evidence in the record supports an alternative mechanism of injury—that K was injured when playing roughly with the family dog—and ask us to exercise our discretion to conduct *de novo* review to reverse the juvenile court judgment finding each child within the jurisdiction of the juvenile court.[2] The Oregon Department of Human Services (ODHS) and the children respond that this is not an exceptional case warranting the exercise of *de novo* review and that we should apply our ordinary standard of review, deferring to the factual findings of the juvenile court and explicit and necessary implicit credibility findings. We agree that this is not an exceptional case, conclude that there is sufficient evidence in the record to support the juvenile court's factual findings, defer to credibility findings made by the juvenile court, and affirm.

Ordinarily in a juvenile dependency case, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's [determination] and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We have discretion to try the cause anew upon the record. *Id.* at 637; ORS 19.415(3)(b). To make that decision, we consider a nonexclusive list of factors contained in ORAP 5.40(8)(d). Typically, we do not exercise *de novo* review where the juvenile court makes "credibility findings"

___

[1] K's father never appeared in the case, and jurisdiction was established by default. When we refer to parents in this opinion, we are referring to mother and D's father/K's stepfather.

[2] The juvenile court reasoned that D was endangered because the parents exhibited behaviors that showed they parented D in a similar manner to K; father had used physical discipline with D in an ODHS supervised visit and mother growled at the child and threatened to "smack him" for speaking Spanish instead of English.

with which the record "comports"; the juvenile court was "aware of the disputed factual issue and its importance to the *** disposition of the case"; and the evidence does not "strongly favor[] a different outcome." *Dept. of Human Services v. T. H.*, 313 Or App 560, 562, 496 P3d 704, *rev den*, 368 Or 637 (2021).

K did not testify in court, but he made multiple statements to different individuals, which were entered into evidence. In addition to attributing some injuries to the dog, he said stepfather had grabbed him and "flied" him toward the trailer and "whooped him" a few days before. The child had multiple sites of bruising on different parts of his body. Also in evidence was testimony from officials at K's preschool about prior injuries he attributed to stepfather punching him in the nose for saying a bad word, and prior injuries on his neck he attributed to playing with the dog. Additionally, there was a video of an ODHS visit where stepfather had hit D twice on the hand, once while telling him "don't hit," and during which mother was so angry that K asked her, "are you trying to kill me?" Mother admitted during trial that she had caused bruising to K's buttocks when she spanked him but also testified that she "never hit any of her kids" due to medical limitations. Father testified that he never used physical discipline with the kids despite the video of the visit where he had slapped D's hand. The juvenile court made implicit credibility findings when it adopted the explanation provided by the medical child abuse examiner and disregarded the explanation provided by family members that the dog injured the child while tugging at a tree limb under the child's arm.[3] We give considerable weight to the trial court's demeanor-based credibility findings, even in exercising *de novo* review. *Dept. of Human Services v. M. C. C.*, 332 Or App 565, 566, 549 P3d 1280, *rev den*, 372 Or 787 (2024).[4] Because the trial court explicitly resolved the

---

[3] K's stepfather, mother, and each of stepfather's parents testified that they did not witness K being injured but speculated that it happened while he was playing roughly with the dog and the tree limb.

[4] Even if we do not rely on implicit findings, there is sufficient evidence for us to draw adverse credibility findings against each of the parents based on the logical inconsistencies between their trial testimony and the video evidence against father on one hand, and mother's admissions on the other. "To the extent that a credibility determination is based on a comparison of the witness's testimony

most important factual dispute against parents, because of credibility issues with the parent's testimony, and because the parents' theory does not account for all of the bases of jurisdiction or all of the injuries to K that the expert testified were intentionally inflicted, we conclude that this is not an exceptional case, decline to review *de novo*, and apply the standard of review set out in *N. P.*, 257 Or App at 639.

There is sufficient evidence in the record for the juvenile court to find that the injuries were intentionally inflicted, as the designated medical provider determined that the injuries were highly suspicious for nonaccidental trauma. When confronted with the explanation put forth by the family about injury while playing with the family dog, Dr. Canal indicated that the injuries to K's neck were consistent with a hand or a blunt object.

Parents make no argument that the juvenile court's exercise of jurisdiction is improper under the standard set out in *N. P.*, 257 Or App at 639, and we agree that the juvenile court's determination is supported by the record; therefore we affirm.

Affirmed.

---

with the substance of other evidence, this court is as well-equipped as the trial court to make that credibility determination." *Dept. of Human Services v. T. M. M.*, 248 Or App 352, 356 n 1, 278 P3d 322, *rev den*, 325 Or 179 (2012) (internal quotation marks, brackets, and citations omitted).