Submitted on record and brief November 14, 1995, accused suspended from the practice of law for three years February 1, 1996

In re Complaint as to the Conduct of

## JOHN BOURCIER,
*Accused.*

(OSB 94-71; SC S42594)

· 909 P2d 1234

Jane E. Angus, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed a brief on behalf of the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) filed a complaint against lawyer John Bourcier (the accused) on October 19, 1994.[1] The accused was personally served with a copy of the Formal Complaint and Notice to Answer on November 23, 1994. On February 17, 1995, the Bar filed and served on the accused an amended complaint, alleging five disciplinary rule violations arising out of the accused's representation of a single client: DR 6-101(B) (neglecting a legal matter entrusted to a lawyer); DR 1-102(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(4) (engaging in conduct prejudicial to the administration of justice); DR 7-102(A)(5) (knowingly making a false statement of law or fact); and DR 1-103(C) (failing to cooperate with disciplinary investigation). The accused did not respond to the Bar's amended complaint. The trial panel entered an order of default and deemed the allegations in the Bar's amended complaint to be true.[2] After considering evidence limited to the issue of the appropriate sanction, the trial panel filed its written opinion based on the amended complaint, finding the accused guilty as charged. The trial panel recommended that the accused be suspended from the practice of law for three years. We allowed the Bar's motion to submit the matter on the record without oral argument, but with briefing. ORAP 11.25(3)(b).

We review *de novo*. ORS 9.536(3); Bar Rules of Procedure (BR) 10.1 and 10.6. The Bar has the burden of establishing a disciplinary violation by clear and convincing evidence. BR 5.2; *In re Dinerman*, 314 Or 308, 311, 840 P2d

---

[1] The accused, in a nearly contemporaneous, unrelated disciplinary proceeding, stipulated to a 60-day suspension from the practice of law. That suspension remains in effect.

[2] Bar Rules of Procedure (BR) 5.8(a) provides in part:

"If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, or if an accused lawyer fails to appear at a hearing set pursuant to BR 2.4(h), the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction."

50 (1992). We deem the allegations in the Bar's amended complaint to be true for purposes of review. *See In re Dickerson*, 322 Or 316, 319, 905 P2d 1140 (1995) (accused did not answer or make any other appearance; court deemed allegations in Bar's formal complaint against an accused to be true for purposes of review). We find the accused guilty of violating DR 6-101(B), DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102-(A)(5), and DR 1-103(C), and we suspend him from the practice of law for three years.

The facts are derived from the allegations in the amended complaint.

On August 28, 1988, Frank Lockett (Lockett) was tried and convicted of robbery in the second degree by a jury in the circuit court. A judgment of an indeterminate sentence not to exceed ten years' imprisonment was entered on October 4, 1988. A timely notice of appeal was filed on October 31, 1988.

On November 2, 1988, the court appointed the accused to pursue Lockett's appeal. On February 6, 1989, the accused filed a motion for an extension of time from February 6, 1989, through March 6, 1989, to serve and file Lockett's brief. On March 6, 1989, the accused filed a second motion for an extension of time to April 3, 1989. On April 5, 1989, the accused filed a motion to dismiss the appeal. In that motion, the accused stated that, after his review of the trial court record and consultation with Lockett, there were no meritorious issues raised in the record that were reviewable on appeal.

The accused did not consult with or advise Lockett, nor did he otherwise keep Lockett informed about the appeal or the motions for extension of time. The accused did not consult Lockett's trial lawyer or discuss with him Lockett's trial court record or possible issues for appeal. The accused failed to advise Lockett that a motion to dismiss the appeal would be or had been filed or that the appeal had been dismissed. Moreover, the accused failed to respond to Lockett's inquiries about the status of his appeal or its dismissal.

In the motion to dismiss the appeal, the accused represented to the court that the motion was "based on a review of the record and consultation with * * * Lockett,

resulting in the determination that there were no meritorious issues raised in the record which are reviewable on appeal." The representation of consultation with Lockett was false. The accused did not at any time discuss or communicate with Lockett about the record or issues of possible appeal, the dismissal of the appeal, or Lockett's right to file a *pro se* brief. *See State v. Balfour*, 311 Or 434, 814 P2d 1069 (1991) (stating the ethical and federal constitutional obligations of Oregon appointed appellate counsel in a criminal appeal when counsel determines that only nonmeritorious arguments exist on which to base an appeal).

As a result of an inquiry to the Court of Appeals, Lockett learned on or about December 8, 1993, that the appeal had been dismissed. Lockett had received no communication of any nature from the accused. Between late November or early December 1988 and December 1993, Lockett had attempted to contact the accused by mail and by telephone. At least one letter was returned to him. In his attempts to reach the accused by telephone, Lockett was informed that the accused's telephone number had been changed and, later, that the accused's telephone service had been disconnected.

Lockett's appeal was dismissed on April 6, 1989. Thereafter, the accused filed a petition for court-appointed attorney fees and was awarded $177. In that petition, the accused represented that he had placed telephone calls to Lockett on November 22, 1988, and April 3, 1989. Telephone calls could be placed to Lockett's counselor, but not directly to Lockett. Lockett claims that he has no recollection of ever receiving a telephone call from the accused, either directly or through his counselor, and that he had not received any communication from the accused about the appeal.

The Bar received Lockett's complaint concerning the accused's conduct on or about November 30, 1993. On December 6, 1993, disciplinary counsel's office forwarded a copy of Lockett's complaint to the accused and requested that he respond on or before December 27, 1993. The letter from disciplinary counsel's office was mailed to the accused at two addresses. Both letters were returned with a corrected address noted. Disciplinary counsel's office again mailed the letters to the accused at the corrected address.

On or about January 3, 1994, the accused acknowledged receipt of those letters and requested an opportunity to discuss the matter with Lockett before responding to the Bar. The accused thereafter did not respond to the Bar's inquiries.

By letter dated January 12, 1994, disciplinary counsel's office advised the accused that his response was required and that the Bar Rules of Procedure do not permit disciplinary counsel's office to discontinue the investigation under the circumstances presented. The accused again was asked to respond to the Bar's inquiries on or before January 25, 1994. The accused did not respond. By letter dated February 3, 1994, disciplinary counsel's office again requested that the accused respond to Lockett's complaint on or before February 11, 1994. The accused did not respond. The matter was then referred to the Local Professional Responsibility Committee (LPRC) for further investigation. The LPRC requested the accused's response to Lockett's complaint. The accused did not respond.

The accused was personally served with the Formal Complaint and Notice to Answer on November 23, 1994. The complaint charged the accused with violations of DR 6-101(B) and DR 1-103(C). On January 13, 1995, the accused was served with a notice of deposition to perpetuate the testimony of Lockett at the Federal Correctional Institute at Sheridan, Oregon. The accused did not appear for Lockett's deposition. On February 24, 1995, the trial panel entered an order of default against the accused, based on his failure to answer the complaint or make other appearance.

On February 17, 1995, the Bar served an amended complaint on the accused. The amended complaint alleged three violations of the Code of Professional Responsibility, namely, DR 1-102(A)(3), DR 1-102(A)(4), and DR 7-102-(A)(5), in addition to those charges included in the original complaint. The accused did not answer the amended complaint or respond in any other manner. On March 16, 1995, the trial panel entered an order of default against the accused.

## DR 6-101(B)

DR 6-101(B) provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." A lawyer's

failure to take action after being appointed to represent a client constitutes neglect, in violation of DR 6-101(B). *See In re Biggs*, 318 Or 281, 294, 864 P2d 1310 (1994) ("[a] lawyer's failure to take action after being retained by a client for legal services constitutes neglect, in violation of DR 6-101(B)"); *In re Purvis*, 306 Or 522, 524-25, 760 P2d 254 (1988) (same). To establish a violation of DR 6-101(B), the Bar need prove only a course of negligent conduct. The accused violated DR 6-101(B) in several respects. The accused failed to communicate with Lockett, failed to take action to pursue Lockett's appeal, failed to advise Lockett that a *pro se* brief could be filed, failed to advise Lockett that the appeal was dismissed, and otherwise failed to respond to Lockett's inquiries. *See Purvis*, 306 Or at 524-25 (lawyer who neglected to take any action for several months after being retained by client violated DR 6-101(B)).

## DR 1-102(A)(3)

■ DR 1-102(A)(3) provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The accused violated DR 1-102(A)(3) by representing to the court that he had consulted with Lockett in advance of filing the motion to dismiss the appeal and that he had telephoned Lockett on other occasions, when neither fact was true.

## DR 1-102(A)(4)

■ DR 1-102(A)(4) provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct that is prejudicial to the administration of justice[.]" "A lawyer violates DR 1-102(A)(4) when the lawyer engages in conduct during the course of a judicial proceeding and the conduct causes or has the potential to cause harm or injury to either the procedural functioning of that proceeding or the substantive interest of a party to that proceeding." *In re Altstatt*, 321 Or 324, 334, 897 P2d 1164 (1995) (citing *In re Haws*, 310 Or 741, 745-48, 801 P2d 818 (1990)). The accused's misrepresentations to the court — that he had consulted with Lockett before filing the motion to dismiss the appeal — interfered with the appeal process and with the orderly resolution of Lockett's appeal and thereby caused substantial harm to Lockett and to the administration of justice. In dismissing

the appeal, the Court of Appeals relied on the accused's representations that he had consulted with Lockett and that there were no meritorious issues. Further, based in part on those misrepresentations, the Court of Appeals authorized the payment of attorney fees to the accused.

## DR 7-102(A)(5)

■        DR 7-102(A)(5) provides that, in a lawyer's representation of a client, the lawyer shall not "[k]nowingly make a false statement of law or fact." Whether a court is misled by the misrepresentation is irrelevant. *In re White*, 311 Or 573, 586, 815 P2d 1257 (1991). The accused knowingly made false statements to the court that he had consulted with Lockett regarding the appeal and about his assessment that there were no meritorious issues for appeal. The accused knowingly made those false statements in order to obtain dismissal of the appeal and an award of attorney fees, based in part on those false statements, in violation of DR 7-102(A)(5).

## DR 1-103(C)

DR 1-103(C) provides:

> "A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

■        The accused violated DR 1-103(C). After being notified by the Bar that he was the subject of a disciplinary investigation, the accused failed to respond to all inquiries from disciplinary counsel's office and the LPRC. He has not asserted that any applicable right or privilege excused his failure to respond. *See Dickerson*, 322 Or at 324 (failure to respond to inquiries from disciplinary counsel violated DR 1-103(C)); *Haws*, 310 Or at 750 (same).

## SANCTION

■        We have found the accused guilty of several violations of the disciplinary rules: DR 6-101(B), DR 1-102(A)(3), DR 1-102(A)(4), DR 7-102(A)(5), and DR 1-103(C). We turn now to the task of deciding what sanction the accused's conduct warrants. In determining the appropriate sanction,

we are guided by the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *See, e.g., Altstatt*, 321 Or at 335 (so stating). Using those standards, we ask four questions in ascertaining an appropriate sanction:

(1) What is the nature of the ethical duty violated?

(2) What was the lawyer's mental state at the time of the violation?

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?

(4) Are there any aggravating or mitigating circumstances? ABA Standard 3.0.

We answer each of those four questions in turn to determine the appropriate sanction for the accused's misconduct.

The accused violated his ethical duties to the client, the legal system, the public, and the profession. ABA Standards 4.4, 4.6, 5.0, 6.0, 7.0. The most important ethical duties are those obligations that a lawyer owes to clients. *Dickerson*, 322 Or at 324 (citing ABA Standards at 5). Such obligations include the duty of diligence and the duty of candor. ABA Standards 4.4, 4.6. Members of the public are entitled to be able to trust lawyers to exhibit the highest standards of honesty and integrity. A lawyer thus owes a duty not to engage in conduct involving dishonesty, fraud, or deceit. A lawyer also owes duties to the profession, which include maintaining its integrity. ABA Standards at 5-6. The maintenance of those standards is critical to public confidence in the legal system. In this case, the accused's misconduct clearly demonstrates that he violated those duties and that he did so "knowingly," that is, with a "conscious awareness of the nature or attendant circumstances of the conduct, but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 17.

The accused's misconduct, however, caused actual injury to Lockett. Lockett was entitled to a judicial determination of his appeal. The accused's misconduct denied him that opportunity. Moreover, public funds were paid to the accused for legal services that he did not render.

There are several aggravating factors: the accused previously was disciplined for misconduct strikingly similar to the misconduct involved in this case;[3] he has substantial experience in the practice of law (he was admitted in 1982); he had a selfish and dishonest motive; he is guilty of multiple offenses that, when coupled with his prior disciplinary record, demonstrate a pattern of misconduct; he was untruthful to the court; he failed to acknowledge the wrongful nature of his conduct; and he failed to cooperate with the Bar's investigation. ABA Standard 9.22 (a), (b), (c), (d), (f), (g), and (i) (listing those factors). Another aggravating factor is that Lockett was vulnerable, in that he was incarcerated and, at the time that this matter came before this court pursuant to ORS 9.536(2), BR 10.1 and BR 10.4, remained incarcerated and required competent legal assistance to evaluate and pursue available legal options. The accused's failure to pursue and protect Lockett's appeal precluded judicial determination. ABA Standard 9.22(h).

Due to the accused's failure to participate in these proceedings, the pleadings and record are devoid of mitigating circumstances.

The Bar urged the trial panel to suspend the accused from the practice of law for a period of two years. The trial panel determined that the accused be suspended for three years. The Bar now urges this court to suspend the accused from the practice of law for a period of three years, consistent with the recommendation of the trial panel.

Prior decisions of this court provide some guidance for imposition of a sanction in this case. In *In re Recker*, 309

---

[3] In October 1993, the accused entered into a stipulation for discipline and accepted a 60-day suspension from the practice of law for violation of DR 6-101(A), DR 6-101(B), DR 2-110(A)(1), DR 2-110(A)(2), and DR 7-101(A)(1). *See In re Bourcier*, 7 DB Rptr 115 (1993). In that case, the accused was appointed to represent a defendant on appeal of his criminal conviction. The accused decided that the appeal had no merit and did not file a brief with the Court of Appeals or respond to the court's order to show cause why the appeal should not be dismissed. That court dismissed the appeal. The accused did not consult with his client concerning his assessment of the case and his decision not to file a brief, and he did not respond to the court's order to show cause. He also failed to inform his client that the appeal was dismissed and failed otherwise to respond to his client's inquiries about the status of the case. The accused remains suspended due to his failure to apply for reinstatement from that suspension. *See* BR 8.1 (stating requirement for formal application for reinstatement as an active member of the Bar).

Or 633, 789 P2d 663 (1990), a lawyer was suspended for two years for failing to respond to her client's efforts to contact her, failing properly to handle a routine legal matter, failing to return client documents, making a false statement to the court, and failing to cooperate with the Bar. In *In re Chandler*, 306 Or 422, 760 P2d 243 (1988), this court imposed a two-year suspension on a lawyer as a result of that lawyer's inaction on a client matter, including his failure to return the client's telephone calls over a three-year period, his delay in forwarding the client's file to a successor lawyer, and his failure to cooperate with the Bar's investigation or with inquiries from the State Lawyers Assistance Committee. In *Chandler*, aggravating factors were two prior disciplinary proceedings and a pattern of neglect. In *In re Arbuckle*, 308 Or 135, 775 P2d 832 (1989), this court imposed a two-year suspension on a lawyer who failed to account for the client's property and failed to acknowledge or respond to any requests or inquiries by the Bar in connection with its investigation of the client's complaint.

In light of the ABA Standards, in light of this court's precedents, and having particular regard for the significance of the accused's professional misconduct and the many aggravating factors, we conclude that a three-year suspension from the practice of law is an appropriate sanction for the accused's misconduct.

The accused is suspended from the practice of law for a period of three years commencing on the effective date of this decision.