Submitted on the record July 22, accused suspended from the practice of law for 120 days September 26, 1996

In re Complaint as to the Conduct of

# CORDELLA JO MILES,
*Accused.*

(OSB 95-50, 95-80; SC S43341)

923 P2d 1219

Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, waived appearance for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary proceeding in which we review a trial panel's decision to suspend Cordella Jo Miles (the accused) from the practice of law for six months. The Oregon State Bar (the Bar) filed a formal complaint against the accused on November 17, 1995, and served a copy of the complaint upon the accused on November 29, 1995. The complaint alleged two violations of Disciplinary Rule (DR) 1-103(C) (failing to respond fully and truthfully to inquiries in a disciplinary investigation).

The accused did not respond to the Bar's formal complaint. On February 23, 1996, a trial panel of the Disciplinary Board entered an Order of Default. In such circumstances, the allegations contained in the complaint are deemed to be true. Rule of Procedure (BR) 5.8(a). On April 29, 1996, the trial panel found the accused guilty as charged. The trial panel suspended the accused from the practice of law for six months and, pursuant to BR 8.1 and 8.3(a), ordered that the accused be required to file a formal application for reinstatement before she is able to resume practice following her suspension.

Because the trial panel's sanction was more than a 60-day suspension, this court automatically reviews that decision. *See* BR 10.1 (requiring review). We granted the Bar's request to submit the matter on the record without oral argument or briefing. *See* ORAP 11.25(3)(b) (providing procedure). The Bar does not challenge the decision of the trial panel on review. The accused has not appeared and did not file a brief in this court.

We review lawyer disciplinary proceedings *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing disciplinary violations by clear and convincing evidence. BR 5.2.

Both causes of the Bar's complaint allege similar conduct by the accused. In each matter, a client reported to the Bar that the accused had engaged in conduct that arguably violated the Code of Professional Responsibility.[1] The

---

[1] The Bar's complaint does not disclose or make any charges based upon the substance of the clients' complaints about the accused. Those complaints

accused failed to respond to initial and follow-up inquiries by the Bar in both matters. In one matter, the accused also failed to respond to messages left for her by a member of the Local Professional Responsibility Committee (the LPRC), who was investigating the accused's conduct. The accused finally consented to be interviewed by the LPRC member only after the LPRC member visited the accused's home unannounced.

DR 1-103(C) provides:

> "A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

On review, we agree with the trial panel that, in failing to respond to the inquiries posed by the Bar and the LPRC, the accused is guilty of two violations of DR 1-103(C).

In determining the appropriate sanction, we look to the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *In re Sousa*, 323 Or 137, 145, 915 P2d 408 (1996). Under those standards, we consider the ethical duty violated, the lawyer's mental state at the time of the violation, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating circumstances. ABA Standard 3.0.

In failing to cooperate with the Bar's investigation, the accused violated her duty to the legal profession. ABA Standard 7.0; *see also In re Schaffner*, 323 Or 472, 479 & n 6, 918 P2d 803 (1996) (applying that standard in similar circumstances). As to the accused's mental state, we conclude that the accused acted with knowledge, because the accused acknowledged the receipt of two letters from the Bar sent by certified mail, one letter pertaining to the investigation into each of the two client matters. The failure of the accused to

---

—whatever they involved—simply served as the bases for the Bar's inquiries. It is not the subject of those inquiries, but the failure to respond to them, that is the gravamen of the complaint before us.

respond to those letters after signing the return receipts demonstrates that she acted with "conscious awareness of the nature or attendant circumstances of [her] conduct." *See* ABA Standards at 7 (defining "knowledge").

We further conclude that the accused's failure to respond to the inquiries of the Bar and the LPRC caused harm to the legal profession and to the public, because she delayed the Bar's investigation and, consequently, the resolution of her clients' complaints. *See In re Haws*, 310 Or 741, 753, 801 P2d 818 (1990) (court reached the same conclusion in similar circumstances); *In re Gastineau*, 317 Or 545, 558, 857 P2d 136 (1993) (court concluded that, when a lawyer persisted in his failure to respond to the Bar's inquiries, the Bar was prejudiced, because "[t]he Bar had to investigate in a more time-consuming way, and the public respect for the Bar was diminished[,] because the Bar could not provide a timely and informed response to the clients' complaints").

We find the existence of the following aggravating factors in this case: A pattern of misconduct and substantial experience in the practice of law.[2] ABA Standards 9.22(c) and (i). We also note that the repeated failure on the part of the accused to respond to the inquiries of the Bar and the LPRC "is a strong aggravating factor." *In re Schaffner*, 323 Or at 480 n 7. The only mitigating factor in the record here is the lack of any prior discipline. ABA Standard 9.32(a).

Before determining the appropriate sanction, we take this opportunity to emphasize the seriousness with which this court views the failure of a lawyer to cooperate with a disciplinary investigation.[3] The public protection provided by DR 1-103(C) is undermined when a lawyer accused of violating another provision of the Code of Professional Responsibility fails to participate in the investigatory process. Indeed, the disciplinary system likely would break down if the mandatory cooperation rule set forth in DR 1-103(C)

_____

[2] The accused was admitted to practice in 1976.

[3] We note, however, that there is a distinction between the Bar's initial investigation into a lawyer's alleged misconduct and the proceedings, including any hearings, before a trial panel of the Disciplinary Board. As this court discussed in *In re Schaffner*, 323 Or 472, 477, 481, 918 P2d 803 (1996), the failure of a lawyer to appear before a trial panel does not constitute a violation of DR 1-103(C), nor can such failure serve as an aggravating factor that may increase the severity of the sanction imposed.

were not in place, given the lack of incentive for a lawyer to cooperate with a Bar investigation if that lawyer had the option of not cooperating. As this court stated in *In re Glass*, 308 Or 297, 305, 779 P2d 612 (1989), *recons den* 309 Or 218, 784 P2d 1094 (1990):

> "We do not view a violation of DR 1-103(C) lightly. The lawyer discipline process has been criticized as being slow and cumbersome. DR 1-103(C) was promulgated in 1983 to insure that complaints are timely investigated and acted upon. The public will lack confidence in the process unless DR 1-103(C) is enforced. We intend that it be followed and that violations be sanctioned."

*See also In re Whipple*, 320 Or 476, 489, 886 P2d 7 (1994) (stating that "[the] responsibility of a lawyer [under DR 1-103(C)] to respond fully and truthfully to inquiries from * * * other authority empowered to investigate [claims of ethical violations] is not less important than a lawyer's other responsibilities under the disciplinary rules" (citation and internal quotation marks omitted; brackets and ellipsis in original)).[4]

■■ The ABA Standards state that suspension is appropriate when a lawyer "knowingly engages in conduct that is a violation of a duty owed to the profession." ABA Standard 7.2; *In re Haws*, 310 Or at 753-54. In view of that provision, we conclude that suspension generally is an appropriate sanction for a knowing violation of DR 1-103(C). In determining the length of such a suspension, we must consider two important factors: (1) the *extent* of noncooperation by the accused; and (2) whether *multiple* violations of the rule occurred. In most cases, either a single, significant failure to cooperate with a disciplinary investigation or lesser, multiple failures to cooperate warrant a lengthy suspension from the practice of law.

In this case, the accused engaged in two violations of DR 1-103(C). In addition, the extent of her failure to cooperate with the Bar's investigation as to each of the two violations was severe. As we have discussed, the accused failed to respond to several inquiries by the Bar in each of two client

---

[4] We do note, however, that DR 1-103(C) provides that the requirement that a lawyer cooperate with a disciplinary investigation is "subject * * * to the exercise of any applicable right or privilege." No such claim was made in this case.

matters and, in one matter, also failed to respond to numerous attempted communications by the LPRC. Consequently, a significant suspension is warranted here.

Two earlier decisions of this court are helpful to our determination of the appropriate length of suspension in this case. First, in *In re Haws*, this court imposed a 63-day suspension upon a lawyer found guilty of seven violations of DR 1-103(C), but stayed the execution of that sanction and placed the lawyer on probation for two years, because the lawyer had provided brief, albeit inadequate, responses to the Bar for six of the seven matters under investigation and also had cooperated with the LPRCs investigating his case. 310 Or at 754. By contrast, the accused in this case did not respond to the Bar at all. Second, in *In re Schaffner*, this court determined that a 60-day suspension was appropriate for a lawyer found guilty of one violation of DR 1-103(C).[5] 323 Or at 481. Although the lawyer in *In re Schaffner* initially failed to respond to letters from the Bar and the LPRC, eventually that lawyer did respond to the Bar's inquiries and also gave his deposition. In the light of that precedent, and considering the extent of the accused's failure to cooperate here, we conclude that a 120-day suspension is the appropriate sanction in this case.

Further, we agree with the trial panel's decision to require the accused to file a formal application for reinstatement, pursuant to BR 8.1, should she desire to return to practice following her suspension. *See* BR 8.3(a) (discussing the ability of the Disciplinary Board to impose special reinstatement requirements upon a lawyer suspended for six months or less). Because the accused never appeared or submitted briefing in the proceedings before the trial panel or this court, we have no information as to why the accused failed to cooperate with the investigation into her alleged misconduct. For the same reason, we also have no information that demonstrates the present ability of the accused to practice law. Consequently, it is appropriate, particularly for the benefit of

---

[5] The court imposed a total suspension of 120 days upon the lawyer in *In re Schaffner*, concluding that a 60-day suspension was appropriate for one violation of DR 1-103(C) and an additional 60-day suspension was appropriate for one violation of DR 6-101(B) (neglect of a legal matter). 323 Or at 481. In that case, there were several aggravating factors, but only one mitigating factor. *Id.* at 479-80.

future clients, to require that the accused explain those matters to the Bar's satisfaction before she is allowed to return to practice.

The accused is suspended from the practice of law for a period of 120 days commencing on the effective date of this decision; formal application for reinstatement under BR 8.1 required.