Submitted on the record May 2, accused is disbarred June 26, 1997

# In re Complaint as to the Conduct of

## JOHN BOURCIER,
*Accused.*

## (OSB 96-37; SC S42594)

939 P2d 604

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, waived appearance for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

**PER CURIAM**

In this lawyer disciplinary proceeding, the Oregon State Bar (the Bar) alleges that the accused violated Disciplinary Rule (DR) 6-101(B) (neglecting a legal matter entrusted to a lawyer) and DR 1-103(C) (failing to cooperate with a disciplinary investigation). A trial panel of the Disciplinary Board found the accused guilty of violating both disciplinary rules and disbarred him.

Because the sanction exceeds a 60-day suspension, this court must review the trial panel's decision. OSB Rules of Procedure (BR) 10.1. This matter is before the court on the record, without oral argument or briefing. ORAP 11.25(3)(b). This court reviews the trial panel's decision *de novo*. ORS 9.536(2); BR 10.6. The Bar has the burden of establishing disciplinary violations by clear and convincing evidence. BR 5.2. On review, we find the accused guilty of violating DR 6-101(B) and DR 1-103(C), and we disbar him.

The trial panel entered a default order against the accused. Therefore, this court deems the following facts alleged in the Bar's formal complaint to be true. *See In re Dickerson*, 322 Or 316, 319, 905 P2d 1140 (1995) (so stating under similar circumstances).

In June 1989, a trial court appointed the accused to represent Jacobs on an appeal of a criminal conviction for theft in the first degree. The accused accepted the appointment. The accused filed a brief (after the court granted him five extensions of time for that task) and represented Jacobs at oral argument. However, the accused never communicated with Jacobs concerning the appeal. Specifically, he failed to advise Jacobs of the requests for extensions of time to file the appellant's brief, failed to discuss or review the appellant's brief with Jacobs, failed to inform Jacobs that the appellant's brief had been filed or to provide Jacobs with a copy of that brief, failed to advise Jacobs that a respondent's brief had been filed or to provide Jacobs with a copy of that brief, failed to inform Jacobs of the scheduled oral argument, failed to advise Jacobs of the court's decision which affirmed the conviction, and failed to provide Jacobs with a copy of the decision and the appellate judgment.

On January 31, 1996, Jacobs filed a complaint with the Bar, stating that the accused never had contacted him after the court appointment. At that time, the accused was on suspended status as a result of an earlier disciplinary action. *See In re Bourcier*, 322 Or 561, 909 P2d 1234 (1996) (suspending the accused for three years for misconduct involving another client). By letter dated February 2, 1996, the Bar informed the accused of the complaint, forwarded a copy of the complaint to him, and requested his response by February 23, 1996. The accused did not respond.

By letter dated February 26, 1996, the Bar again requested the accused's response to Jacobs' complaint. The Bar sent the letter by certified mail and regular mail. The certified letter was returned unclaimed. The letter sent by regular mail was not returned. The accused did not respond.

By letter dated March 7, 1996, the Bar informed the accused that, because he had not responded to the Bar's requests for a response to Jacobs' complaint, the Bar was referring the matter to a Local Professional Responsibility Committee (LPRC) for investigation. The Bar also informed the accused that the failure to cooperate with a disciplinary investigation was a violation of DR 1-103(C) and that his failure to respond would be brought to the LPRC's attention. The Bar sent that letter by certified and regular mail. The certified letter was returned unclaimed. The letter sent by regular mail was not returned. The accused did not respond.

By letter dated June 19, 1996, the LPRC asked the accused whether he had contacted Jacobs during his representation of him. Specifically, the LPRC asked whether the accused had met with Jacobs in person, spoken with him by telephone, or corresponded with him to any extent. The LPRC reminded the accused of his duty to cooperate. The accused did not respond.

On September 3, 1996, the Bar filed a formal complaint against the accused, alleging that the accused had violated DR 6-101(B), by failing to advise Jacobs about his case, and DR 1-103(C), by "fail[ing] to cooperate and respond fully to inquiries from" the Bar. The accused was served personally with a copy of the formal complaint. He did not file an answer or make any other appearance.

The trial panel entered an order of default on November 20, 1996, and deemed the allegations in the complaint to be true. BR 5.8(a). On January 29, 1997, the trial panel held a formal hearing for the purpose of determining the appropriate sanction and concluded that the accused should be disbarred.

■ DR 6-101(B) provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." Isolated incidents of ordinary negligence do not violate this rule; however, a course of negligent conduct does. *In re Collier*, 295 Or 320, 330, 667 P2d 481 (1983). The conduct of the accused in respect to Jacobs' appeal constitutes a course of negligent conduct. We therefore conclude that the accused's conduct violated DR 6-101(B).

■ DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

There is nothing in the record to suggest that, in failing to respond to the Bar's investigation, the accused was exercising any right or privilege. Although the accused was on suspension from a previous disciplinary action when the client filed his complaint in this case, the accused still had a duty to cooperate with the Bar. *In re Hereford*, 306 Or 69, 74, 756 P2d 30 (1988). The accused's failure to respond to the Bar's inquiries regarding Jacobs' complaint violated DR 1-103(C). *See In re Miles*, 324 Or 218, 221, 923 P2d 1219 (1996) (finding violation of the rule based on similar facts).

■ We now turn to the question of sanction. We first note that this court has the power to sanction a lawyer even though the lawyer is on suspension. *In re Chandler*, 306 Or 422, 430 n 2, 760 P2d 243 (1988). In determining the appropriate sanction, we are guided by the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards) and Oregon case law. *In re Hassenstab*, 325 Or 166, 178, 934 P2d 1110 (1997). Using the ABA

Standards, the four factors that this court examines to determine the appropriate sanction are: (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury; and (4) the existence of aggravating or mitigating circumstances. ABA Standard 3.0.

The accused violated duties to his client and to the profession. Specifically, a lawyer owes to a client the duty of diligence, which requires that the lawyer communicate with and keep the client informed of the status, progress, and disposition of a legal matter. ABA Standard 4.4. A lawyer's duty to the profession includes an obligation to respond to inquiries concerning allegations of professional misconduct. ABA Standard 7.0; *Miles*, 324 Or at 221. This court considers the failure to cooperate with a disciplinary investigation to be a serious ethical violation. *Miles*, 324 Or at 222.

Under the ABA Standards, the relevant mental states are intent, knowledge, and negligence. ABA Standards at 6. Knowledge is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* at 7. The record indicates that the Bar sent the accused letters informing him of Jacobs' complaint and of his duty to cooperate with the Bar's investigation. We find that the accused knowingly did not cooperate with the Bar's investigation. The record also indicates that Jacobs telephoned the accused numerous times and was unable to speak with him and that Jacobs received no response. The accused never contacted Jacobs about the appeal. From those facts, we also find that the accused acted knowingly in failing to communicate with Jacobs regarding his appeal.

A potential injury to a client, due to an ethical violation, will support the imposition of a sanction; the injury need not be actual. *In re Williams*, 314 Or 530, 547, 840 P2d 1280 (1992). In this case, the record does not demonstrate that Jacobs suffered actual injury. However, the potential for injury existed because Jacobs was deprived of any meaningful involvement in his appeal. In addition, the profession and the Bar suffered actual injury from the accused's failure to respond to the inquiries from the Bar and the LPRC regarding Jacobs' complaint. *See Miles*, 324 Or at 222 ("[T]he

accused's failure to respond to the inquiries of the Bar and the LPRC caused harm to the legal profession and to the public, because she delayed the Bar's investigation and, consequently, the resolution of her clients' complaints."). The Bar and the LPRC were not able to investigate Jacobs' complaint efficiently. The accused's conduct disrupted the important regulatory functions of those entities.

An aggravating factor is a consideration or factor that may justify an increase in the degree of discipline to be imposed. ABA Standard 9.21. Several of those factors are present in this case. The accused was sanctioned for two prior disciplinary offenses, which we discuss below. *See* ABA Standard 9.22(a) (prior disciplinary offenses are an aggravating factor). In each of those cases, as in this case, the accused was charged with neglecting a legal matter entrusted to him. In the most recent case, as in this case, the Bar also alleged that the accused failed to cooperate with the Bar's investigation of the accused's misconduct.

■ The chronology of the three disciplinary proceedings is significant to our determination of the appropriate sanction. The accused began representing each of the clients from the prior disciplinary offenses, and the client in this case, between November 1988 and March 1991. On May 5, 1993, the Bar filed its first formal complaint against the accused, alleging that he had failed to file an appellate brief on behalf of a client, failed to respond to that client's attempts to contact him, failed to inform that client that he believed the appeal had no merit and that he would not file a brief, failed to respond to the Court of Appeals' order to show cause why the appeal should not be dismissed, and failed to inform his client that the court had dismissed the appeal. In September 1993, the Disciplinary Board approved a stipulation for discipline whereby the accused accepted a 60-day suspension from the practice of law. *In re Bourcier*, 7 DB Rptr 115 (1993).

In November 1993, another client filed a complaint against the accused. In February 1995, the Bar filed an amended formal complaint, alleging that the accused had failed to consult with or advise his client about the appeal, failed to file an appellant's brief, failed to respond to his

client's inquiries about the status of his appeal or its dismissal, and failed to respond to the Bar's inquiries about the complaint filed by his client. In February 1996, this court suspended the accused for three years. *Bourcier*, 322 Or at 571. That sanction was the maximum sanction that a lawyer could receive at that time. *See* BR 6.1(a)(iii) (1996) (so providing). The accused still is on suspension as a result of that sanction.

The accused's misconduct with respect to his three clients occurred, for the most part, before the three disciplinary proceedings commenced. However, his failure to cooperate with the Bar's investigation in this case occurred *after* he had received the maximum sanction, short of disbarment, for similar misconduct in the second proceeding. The continuation of that misconduct, in the face of the accused's own disciplinary experience, is particularly serious.

We also find, as an aggravating factor, that the accused's actions demonstrate a pattern of misconduct. *See* ABA Standard 9.22(c) (a pattern of misconduct is an aggravating factor). In addition, the accused was admitted to practice in 1982 and had substantial experience in the practice of law. *See* ABA Standard 9.22(i) (substantial experience in the practice of law is an aggravating factor). No mitigating factors appear in the record.

Fortuitously, this court decides this date another lawyer discipline case that, like this case, involves charges of neglecting a legal matter and failure to cooperate with a disciplinary investigation, among others. *In re Schaffner*, 325 Or 421, 939 P2d 39 (1997). This court imposed a two-year suspension in *Schaffner* for conduct that bears at least some similarity to that involved in this case. We believe, however, that the accused's behavior and disciplinary record here justify imposition of a more severe sanction than that imposed in *Schaffner*. In particular, the accused repeatedly failed to respond to inquiries from the Bar after this court already had disciplined him, with a three-year suspension, for the same misconduct. In addition, the court concludes that the accused's acts of neglect here are qualitatively different and more serious than the acts of neglect at issue in *Schaffner*. For those reasons, the sanction that we impose here is more

severe than, but not inconsistent with, the sanction imposed in *Schaffner*.

The purpose of a lawyer disciplinary proceeding is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge properly their professional duties to clients, the public, the legal system, and the legal profession. ABA Standards at 7. We conclude that a lawyer who neglects clients' cases and fails to cooperate with the disciplinary authorities is a threat to the profession and the public and that that conduct warrants a significant sanction.

The ABA Standards provide that disbarment is appropriate when the court has suspended a lawyer for the same or similar misconduct (here, failure to cooperate), and the lawyer intentionally or knowingly engages in similar acts of misconduct that cause injury, or potential injury, to the client, the public, the legal system, or the profession. ABA Standard 8.1(b). Despite the accused's previous discipline for failing to cooperate with a disciplinary investigation, he again engaged in the same type of misconduct and caused injury to the profession and to the legal system. On the basis of those considerations, we conclude that disbarment is the appropriate sanction.

The accused is disbarred.