Submitted on the record April 15, accused suspended from the practice of law for five years October 29, 1998

In re Complaint as to the Conduct of

## RICHARD F. CRIST,
*Accused.*

## (OSB 97-18; SC S30840)

965 P2d 1023

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

No appearance *contra*.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.

PER CURIAM

## PER CURIAM

The Oregon State Bar (the Bar) charged the accused by formal complaint with violating Code of Professional Responsibility Disciplinary Rules (DR) 6-101(B) (neglecting a legal matter),[1] DR 1-102(A)(4) (engaging in conduct prejudicial to the administration of justice),[2] and DR 1-103(C) (failing to cooperate during disciplinary investigation).[3] The accused was served personally with a copy of the complaint and notice to answer. He failed to file an answer or to make any appearance throughout these proceedings.

A trial panel of the Disciplinary Board entered an order finding the accused in default. Rule of Procedure (BR) 5.8(a).[4] Thereafter, the trial panel deemed the allegations in the formal complaint to be true. BR 5.8(a).

The trial panel held a hearing solely on the issue of sanction. BR 5.8(a). A majority of the trial panel suspended the accused from the practice of law for a period of three years. One panel member dissented, concluding that disbarment is the appropriate sanction.

Under ORS 9.536(2) and (3) and BR 10.1, this court is required to review the trial panel's decision. We review *de*

---

[1] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

[2] DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"* * * * *                                      .

"Engage in conduct that is prejudicial to the administration of justice[.]"

[3] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

[4] BR 5.8(a) provides, in part:

"If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, or if an accused lawyer fails to appear at a hearing set pursuant to BR 2.4(h), the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction."

*novo.* ORS 9.536(3); BR 10.6. The accused did not file a brief or make any appearance in this court. We granted the Bar's motion to submit the matter on the record without oral argument. ORAP 11.25(3)(b). The Bar has the burden of establishing misconduct by clear and convincing evidence. BR 5.2. For the purposes of review, because the accused defaulted, we deem the allegations contained in the Bar's complaint to be true. *See In re Sousa*, 323 Or 137, 140, 915 P2d 408 (1996) (so holding in similar circumstances).

The Bar's formal complaint against the accused alleged, in part:

"3.

"On or about September 8, 1995, the Accused was selected as an arbitrator in the Multnomah County Circuit Court case entitled *West Slope Services, Inc. v. Jacobs*, Case No. 95C 842214. A hearing was conducted on November 24, 1995. Pursuant to UTCR 13.220, the Accused was required to file an award within 14 days or request a continuance. The Accused failed to file the award or request a continuance.

"4.

"On or about December 20, 1995, the court filed a notice of dismissal. The Accused assured the parties that the decision would be mailed the following week. The Accused failed to file the award and counsel for one of the parties filed a motion to continue the matter to avoid the dismissal. The court granted the motion and continued the case until January 31, 1996. Thereafter, the Accused failed to respond to counsel's inquiries concerning the matter.

"5.

"On or about February 1, 1996, the Accused filed the arbitrator's award in favor of the defendant plus costs and attorney's fees. The amount of costs and attorney fees were to be determined by the Accused. On February 13, 1996, defendant's counsel filed a Statement of Costs and Disbursements, and on February 23, 1996, plaintiff's counsel submitted an Objection to Defendant's Cost Bill re: Attorney Fees. The Accused failed to rule or file an Amended Arbitration Award concerning the cost and attorney fees.

"6.

"Between April 18, 1996, and early November 1996, counsel and the court attempted to communicate with the Accused on several occasions to determine the status of the Accused's ruling. The Accused did not respond.

"7.

"On June 27, 1996, the court requested that the Accused file his supplemental award by July 3, 1996. The Accused did not respond.

"8.

"On November 13, 1996, the court issued an Order to Show Cause to Arbitrator, requiring that the Accused appear on November 25, 1996 and show cause why he had not complied with the court's directive of June 27, 1996. On November 23, 1996, the Accused filed an Amended Arbitration Award.

"9.

"On December 6, 1996, the Hon. Kristena LaMar filed a complaint with the Oregon State Bar concerning the Accused's conduct. On December 16, 1996, Disciplinary Counsel's Office forwarded a copy of the complaint to the Accused and requested his response on or before January 6, 1997. The Accused did not respond. On January 10, 1997, Disciplinary Counsel's Office again requested the Accused's response to the complaint on or before January 17, 1997. The Accused did not respond.

"10.

"Thereafter, the complaint was referred to the Clackamas/Linn/Marion County Local Professional Responsibility Committee (hereinafter, 'LPRC') for further investigation. The Accused did not respond to the LPRC's telephone messages and written communications.

"11.

"While the subject of a disciplinary investigation, the Accused failed to respond to the inquiries of the Disciplinary Counsel's Office and the LPRC, which are empowered to investigate or act upon the conduct of lawyers."

On the basis of the Bar's formal complaint and the accused's default, we agree with the trial panel that the accused is guilty of violating DR 6-101(B), DR 1-102(A)(4), and DR 1-103(C) of the Code of Professional Responsibility. We next determine the appropriate sanction.

■■ The purpose of a sanction is not to penalize the accused, but to protect the public and the integrity of the profession. *In re Stauffer*, 327 Or 44, 66, 956 P2d 967 (1998). In considering the appropriate sanction for the violations found, this court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *Stauffer*, 327 Or at 66. The court considers four factors: the duty violated, the accused's mental state, the actual or potential injury caused by the accused's misconduct, and any aggravating or mitigating circumstances. ABA Standard 3.0.

1. *Ethical duties violated.*

■ The most fundamental duty that a lawyer owes to the public is to maintain the standards of personal integrity on which the community relies. ABA Standard 5.0. The accused violated his duties to the legal system and to the profession. *See* ABA Standards 6.2 (setting out sanctions for abuse of the legal process), 7.0 (setting out sanctions for violations of duties owed to the profession). Lawyers are officers of the court, and the public expects lawyers to abide by the legal rules of substance and procedure which affect the administration of justice. ABA Standard 6.0. The accused violated his duty to the court by failing to obey his obligations under Uniform Trial Court Rule (UTCR) 13.210 (requiring the arbitrator to send the award to the parties and to establish procedures for determining attorney fees and costs within seven days after the conclusion of an arbitration hearing) and UTCR 13.220 (establishing deadlines for filing awards). After violating UTCR 13.210 by failing to timely file an award, the accused violated UTCR 13.220 by failing to request a extension of time to file the award.

■ The accused also disregarded the court's directives, ABA Standard 6.2, and his duty of diligence to the parties to the arbitration process. His duty to the parties in the arbitration may be likened to the duty of diligence a lawyer owes to

a client. ABA Standard 4.4. *See In re Bourcier*, 325 Or 429, 434, 939 P2d 604 (1997) *(Bourcier II)* (lawyer's duty of diligence requires that lawyer communicate with and keep client informed of status, progress, and disposition of a legal matter). The parties selected the accused to serve as the arbitrator to decide their case. He failed to discharge his required duty.

■        Finally, the accused's failure to respond to the inquiries of the Bar and the LPRC violated his duty to the profession and to the public by delaying the Bar's investigation and, consequently, by delaying the resolution of the complaints against him. ABA Standard 7.0. *See Bourcier II*, 325 Or at 434 (lawyer's duty to the profession includes an obligation to respond to inquiries concerning allegations of professional misconduct); *In re Miles*, 324 Or 218, 222, 923 P2d 1219 (1996) (applying ABA Standard 7.0 in similar circumstances). This court considers the complete failure to cooperate with a disciplinary investigation to be a serious ethical violation. *Bourcier II*, 325 Or at 434, citing *Miles*, 324 Or at 222.

2.  *Mental state.*

■        The ABA Standards recognize three mental states: intent, knowledge, and negligence. ABA Standards at 7. The principal issue in this case is whether the accused acted with intent or with knowledge. "Intent" exists when a lawyer acts with the conscious objective or purpose to accomplish a particular result. *Ibid.* "Knowledge" is defined as the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. *Ibid.* With regard to the violations of DR 6-101(B) and DR 1-102(A)(4), we agree with the trial panel that the accused acted with knowledge.

■        With regard to the violation of DR 1-103(C), we disagree with the trial panel's conclusion that the accused's conduct was intentional. The Bar and its representatives sent the accused five letters and left one telephone message on his answering machine. The accused signed receipts acknowledging receipt of three of those letters. He failed to respond. We find that the accused acted with knowledge when he failed to do so. *See Bourcier II*, 325 Or at 434 (finding that

accused lawyer acted knowingly when the Bar sent letters advising him of its disciplinary investigation and he failed to respond); *Miles*, 324 Or at 221-22 (accused lawyer's receipt of certified letters from Bar supported finding of knowledge).

### 3. *Extent of injury.*

■ Because the purpose of professional discipline is to protect the public, an injury need not be actual, but only potential, to support the imposition of a sanction. *In re Williams*, 314 Or 530, 547, 840 P2d 1280 (1992). The facts of this case show both potential and actual injury.

■ The accused's violation of DR 6-101(B) caused actual injury to the parties, because they were required to coax an award from him. The accused was selected as an arbitrator in September 1995. A hearing was held in November 1995. The accused failed to file the award in a timely manner or to request a continuance. In December 1995, the court filed a notice of dismissal. The accused assured the parties that he would mail a decision the following week. He failed to do so, forcing counsel for one of the parties to file a motion with the court to continue the matter to avoid dismissal. The court continued the matter until January 1996. The plaintiff's counsel left telephone messages with the accused, but received no direct response. On January 29, 1996, the accused mailed the arbitrator's award, which found in favor of the defendant, and awarded costs and attorney fees. In February 1996, plaintiff's counsel submitted an objection to defendant's cost bill regarding attorney fees. The accused failed to rule or file an amended award concerning defendant's cost bill. In June 1996, the court requested that the accused filed his supplemental award by July 3, 1996. The accused did not respond. On November 13, 1996, the court issued an order to show cause requiring the accused to appear on November 25, 1996, and to show cause why he had not complied with the court's June 1996 directive. On November 23, 1996, the accused filed an amended award.

Actual injury occurred to the defendant because, by the time the accused ruled and awarded attorney fees and costs, the plaintiff no longer was in business and the defendant was unable to recover on his judgment. The potential for

injury also existed, because the arbitration case was at risk of being dismissed.

The accused's violation of DR 1-102(A)(4) caused actual injury to the legal system, because it caused unnecessary congestion of the court's docket, inordinate delay in the dispute resolution process, and a wasteful expenditure of judicial resources. *See Stauffer*, 327 Or at 59-61 (lawyer's delay in closing probate of estate violated DR 1-102(A)(4)).

Finally, the accused's violation of DR 1-103(C) caused actual injury to the profession and the public, because it delayed the Bar's investigation. *See Miles*, 324 Or at 222 (reaching the same conclusion in similar circumstances).

4. *Aggravating and mitigating circumstances.*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose. ABA Standard 9.1. An aggravating circumstance in this case is the accused's prior disciplinary offenses. ABA Standard 9.22(a). In 1971, this court placed the accused on two years' probation for neglecting to file bankruptcy petitions and for misrepresentation. *In re Richard E. Crist*, 258 Or 88, 481 P2d 74 (1971). In 1984, the accused was suspended for six months, with four months stayed pending completion of a three-year probation. *In re Crist*, 297 Or 334, 683 P2d 85 (1984). The accused was suspended because he was not competent to handle a probate matter, his incompetency caused inordinate delay and tax penalties to be assessed on the probate, he misinformed his client, and he engaged in conduct prejudicial to the administration of justice. *Id.* at 336.

In *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997), this court stated:

"* * * [T]he following considerations * * * are an important part of our analysis [when applying the prior offenses aggravating factor]: (1) the relative seriousness of the prior offense and resulting sanction; (2) the similarity of the prior offense to the offense in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether

the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. Those considerations are important, because they can serve to heighten or diminish the significance of earlier misconduct."

Applying those considerations to this case, it is significant that the accused was disciplined twice for earlier misconduct before he engaged in the misconduct at issue here, which demonstrates that he had "both warning and knowledge of the disciplinary process." *Ibid.* (citing *In re Hereford*, 306 Or 69, 75, 756 P2d 30 (1988)). Also, the accused has been disciplined for misconduct almost identical to that at issue here, *viz.*, neglect and failure to cooperate.

Other aggravating circumstances present in this case are a pattern of misconduct, ABA Standard 9.22(c), and substantial experience in the practice of law, ABA Standard 9.22(i).

There are no mitigating circumstances in this case.

In *Miles*, the court concluded that

"suspension generally is an appropriate sanction for a knowing violation of DR 1-103(C). In determining the length of such a suspension, we must consider two important factors: (1) the *extent* of noncooperation by the accused; and (2) whether *multiple* violations of the rule occurred. In most cases, either a single, significant failure to cooperate with a disciplinary investigation or lesser, multiple failures to cooperate warrant a lengthy suspension from the practice of law." 324 Or at 223 (emphasis in original).

We view the accused's failure to cooperate here to be significant. *See id.* at 223-24 (reaching that conclusion in similar circumstances).

Generally, the ABA Standards provide that a suspension is appropriate when a lawyer knowingly violates multiple disciplinary rules such as those involved here. ABA Standards 4.42 and 7.2. Consonant with the standards, we conclude that a lengthy suspension is appropriate here.

The remaining consideration is this court's case law. We have found no Oregon case directly on point. However, some cases are instructive. For example, in *In re Chandler*,

306 Or 422, 760 P2d 243 (1988), this court imposed a two-year suspension when the lawyer had neglected legal matters, failed to promptly return a client's property, and failed to cooperate with the Bar and the State Lawyers Assistance Committee. In *In re Schaffner*, 323 Or 472, 918 P2d 803 (1996) (*Schaffner I*), this court found that the lawyer had violated DR 6-101(B) and DR 1-103(C) and imposed a 120-day suspension from the practice of law. Subsequently, the court imposed a two-year suspension when the same lawyer engaged in similar misconduct. *In re Schaffner*, 325 Or 421, 939 P2d 39 (1997) (*Schaffner II*). Additionally, in *In re Bourcier*, 322 Or 561, 909 P2d 1234 (1996) (*Bourcier I*), the court suspended a lawyer, who had a disciplinary record, for three years for violating DR 6-101(B), DR 1-102(A)(4), DR 1-103(C), and other rules. The following year, the court disbarred the same lawyer for violating DR 6-101(B) and DR 1-103(C). The court emphasized the extent of the lawyer's failure to cooperate in the disciplinary investigation and his pattern of misconduct. *Bourcier II*, 325 Or at 437.

Because of the seriousness of the accused's misconduct, and the existence of several aggravating circumstances, particularly the accused's disciplinary record and his complete failure to cooperate in the disciplinary investigation, we conclude that a five-year suspension is appropriate.

The accused is suspended from the practice of law for a period of five years, commencing 60 days from the date of filing of this decision.